# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | **Case No. 17-00450-TLM** |
| **FARMERS GRAIN, LLC,** ) | |
| ) | **Chapter 7** |
| Debtor. ) | |
| _____ ) | |
| ) | |
| **FARMERS GRAIN, LLC,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                                             ) | **Adv. No. 17-06018-TLM** |
| ) | |
| **DC LAND OPERATING** ) | |
| **COMPANY, LLC, et al.,** ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM OF DECISION
_____

**INTRODUCTION**

Before the Court is a motion for summary judgment, Adv. Doc. No. 67 ("Motion"), filed by defendant DC Land Operating Company, LLC ("DC Land").[1] Defendant Rabo Agrifinance LLC ("Rabo") objects to the Motion, arguing

___

[1] "Adv. Doc. No." refers to filings in the instant adversary proceeding, while "Doc. No." refers to those filed in Debtor's bankruptcy, Case No. 17-00450-TLM.

MEMORANDUM OF DECISION - 1

genuine issues of disputed fact preclude summary judgment. Adv. Doc. No. 81.[2]

Hearing on the matter was held on January 22, 2018.

**FACTS**

DC Land entered into a written contract to sell 7,200 tons of corn to the debtor, Farmers Grain, LLC ("Farmers Grain"). Adv. Doc. No. 68 at 12 (the "Contract").[3] The Contract provided that DC Land would deliver the corn to Farmers Grain's location in Nyssa, Oregon. It did not provide a specific date by which delivery was required. The Contract is a two-page document (including the attached drying schedule) that establishes the agreement between DC Land and Farmers Grain. Included in the contract are "pricing notes" providing that DC Land would be paid $176.07 per ton for 5,000 tons of corn and $187.50 for 2,200 tons.

DC Land commenced deliveries of corn on October 18, 2016, and continued to deliver corn until November 29, 2016. On or about that date, DC Land was notified that Farmers Grain had reached its storage capacity and was unable to receive additional corn. Adv. Doc. No. 82 at 5–6. To that point, DC

---

[2] The undisputed facts are established through the parties's filings, competent declarations, and judicial notice. All justifiable inferences are drawn in favor of the non-moving party. *See Gugino v. Clark's Crystal Springs Ranch, LLC (In re Clark)*, 2014 WL 2895428, at *2 (Bankr. D. Idaho June 25, 2014).

[3] This "MODIFIED Dry Corn Contract" shows that the original contract date was October 27, 2016, and that the contract was modified on November 25, 2016. Adv. Doc. No. 68 at 12.

MEMORANDUM OF DECISION - 2

Land had delivered approximately 6,780.87 tons of corn due under the Contract. *Id*. at 6. DC Land discontinued its deliveries and stored the harvested, but undelivered, corn at its own location. *Id* at 7.

In February 2017, DC Land was told that Farmers Grain could again receive corn deliveries. Between February 6, 2017 and March 9, 2017, DC Land delivered an additional 468.48 tons of corn to Farmers Grain, bringing the total of its deliveries up to 7,249.35 tons. *Id*. at 8–9. In its submissions, DC Land provided a list, obtained from Farmers Grain, that recorded all deliveries DC Land made between October 18, 2016, and March 22, 2017. Adv. Doc. No. 68 at 14–23.[4] That record shows Farmers Grain used two numbers—1-0016C-5A and 1-0016C-5B—to track DC Land's deliveries.

On April 18, 2017, Farmers Grain filed its petition for relief under chapter 11. Doc. No. 1.[5] Farmers Grain listed DC Land as a creditor with two separate claims in the amounts of $680,883.22 and $413,963.56. Doc. No. 1 at 7.

On June 7, 2017, Mark Coombs ("Coombs"), DC Land's managing member, filed a Notice of Claim of Agricultural Services Lien, pursuant to O.R.S. § 87.242. Adv. Doc. No. 68 at 24 ("Notice"); *see also*, Adv. Doc. No. 82 at 12. In the Notice, DC Land claimed a lien in the amount of $1,292,884.78 for the corn it

---

[4] Neither the authenticity nor accuracy of this record are disputed by Rabo.

[5] The case was voluntarily converted to a chapter 7 case on August 15, 2017. Doc. No. 89.

MEMORANDUM OF DECISION - 3

delivered between October 2016 and March 2017. However, having received some payments from Farmers Grain during the pendency of these bankruptcy proceedings, DC Land filed a proof of claim in the amount of $1,012,785.14, which represents the amount it is owed on the corn it delivered in October and November 2016. Proof of Claim No. 15-2. DC Land contends that this claim is secured by a lien in Farmers Grain's inventory or the proceeds therefrom.

On June 16, 2017, the trustee initiated this adversary proceeding to determine whether a number of grain producers, including DC Land, have secured interests in Farmers Grain's inventory. Adv. Doc. No. 1 at 5.

## LEGAL STANDARD

This Court has articulated the summary judgment standard as follows:

> Summary judgment may be granted if, when the evidence is viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56[], incorporated by Fed. R. Bankr. P. 7056; *Leimbach v. Lane (In re Lane)*, 302 B.R. 75, 81 (Bankr. D. Idaho 2003) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)).
>
> The Court does not weigh evidence in resolving such motions but, rather, determines only whether a material factual dispute remains for trial. *Leimbach*, 302 B.R. at 81 (citing *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997)). A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party. A fact is "material" if it might affect the outcome of the case. *Id*. (citing *Far Out Prods.*, 247 F.3d at 992).

*Thorian v. Baro Enters., LLC (In re Thorian)*, 387 B.R. 50, 61 (Bankr. D. Idaho

MEMORANDUM OF DECISION - 4

2008).

The initial burden of showing there is no genuine issue of material fact rests on the moving party. *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998)). Once the moving party has met its initial burden, if the nonmoving party bears the burden of proof at trial, the burden then shifts to the nonmoving party to produce evidence sufficient to support a trial judgment in his favor. *Gugino v. Alliance Title & Escrow Corp., et al. (In re Ganier),* 2010 WL 1780356, *1–2 (Bankr. D. Idaho May 3, 2010) *(*citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In doing so, the nonmoving party must go beyond the pleadings and show by affidavits or by the discovery and disclosure materials on file that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2). While the Court must view the facts in the light most favorable to the nonmoving party, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

**DISCUSSION AND DISPOSITION**

DC Land asserts it has an enforceable lien in Farmers Grain's inventory or proceeds therefrom. Under Oregon statute, "[a]n agricultural producer that delivers or transfers grain for consideration has a lien on the inventory of the

purchaser and proceeds received by the purchaser for sale of the inventory."[6] O.R.S. § 87.755(1). The lien is automatically created and attaches to the inventory and proceeds on the date physical possession of the grain is transferred to the purchaser. *Id*. at (2). The producer need not file any notice in order to perfect its lien. *Id*. at (3).

A grain producer's lien under O.R.S. § 87.755 expires 180 days after the lien attaches, unless the producer extends the lien by filing a notice of lien under O.R.S. § 87.762 or a notice of claim of lien under O.R.S. § 87.242. O.R.S. § 87.762(1)–(2). DC Land contends it properly extended its lien under O.R.S. § 87.242 which provides, in relevant part, "[a] person claiming a lien created by ORS 87.755 shall file a written notice of claim of lien with the Secretary of State not later than 180 days after the close of the furnishing of the labor, services or materials." O.R.S. § 87.242(1).

Rabo does not contest that a valid lien arose in favor of DC Land under O.R.S. § 87.755 when DC Land delivered corn to Farmers Grain. Nor does it contest that Coombs, as managing member of DC Land, filed the Notice, pursuant to O.R.S. § 87.242, on June 7, 2017. However, Rabo argues there are several disputed facts regarding DC Land's claimed lien, which preclude summary

---

[6] Grain is defined to include corn, among many other agricultural products. O.R.S. § 87.750.

MEMORANDUM OF DECISION - 6

judgment.

### A. The question of more than one contract

Rabo argues, based on Farmers Grain's bankruptcy schedules listing two different obligations to DC Land, and Farmers Grain's records tracking deliveries from DC Land, there are disputed facts as to whether the corn DC Land delivered between October 18, 2016, and March 9, 2017, was delivered solely pursuant to the Contract or whether there were two contracts at issue. The Court concludes that Rabo's assertion does not raise a genuine issue of material fact.

The evidence before the Court includes only one written contract—the Contract. *See* Adv. Doc. No. 68 at 12. Included in the Contract are "pricing notes" providing that DC Land would be paid $176.07 per ton for 5,000 tons of corn and $187.50 per ton for 2,200 tons. Farmers Grain's listing of the deliveries between October 18, 2016 and March 22, 2017, Adv. Doc. No. 68 at 14–23, shows the number "1-0016C-5A" was used to track corn priced at $176.07 per ton and the number "1-0016C-5B" was used to track corn priced at $187.50 per ton. As testified to by Coombs during his January 5, 2018 deposition, those numbers simply refer to the "same contract, different pricing." Adv. Doc. No. 83-1 at 10. In other words, the two different numbers were used to track delivery of the 5,000 tons priced at $176.07 and delivery of the 2,200 tons priced at $187.50. *Id.* at 10–11. There is no evidence establishing the existence of a separate or additional

MEMORANDUM OF DECISION - 7

contract. DC Land has met its burden of showing there is no genuine issue of material fact regarding the Contract under which corn was delivered. Rabo did not, in response, provide evidence to show a genuine issue of material fact remains for trial.

### B.    The question of modification of the Contract

Rabo also argues that Coombs' deposition testimony raises an issue of fact regarding whether DC Land and Farmers Grain orally modified the Contract at the time Farmers Grain reached capacity.[7] Rabo asserts DC Land was "relieved" of its obligation to deliver the remaining 468 tons of corn and, consequently, finished making deliveries "under the Contract" on November 29, 2016. According to Rabo, this means the last day upon which DC Land could have filed a notice to extend its lien was May 28, 2017. DC Land, on the other hand, argues that all deliveries made through March 9, 2017, were made under the Contract and, therefore, it had 180 day from that date—until September 5, 2017—to extend its lien, and it validly did so by its June 7, 2017 Notice.

In his deposition, Coombs explained his discussions with Farmers Grain after learning that Farmers Grain had reached its storage capacity. Coombs testified that upon notice of the capacity problem, he weighed his options and,

---

[7] Oregon law provides that a written contract may be orally modified so long as the contract does not fall within the statute of frauds. *See Norris, Beggs & Simpson v. Eastage Theatres, Inc.*, 491 P.2d 1018, 1022 (Or. 1971). Contracts of the type at issue here are not within the statute of frauds. *See* O.R.S. § 41.580.

MEMORANDUM OF DECISION - 8

after discussion with Farmers Grain, decided to finish harvesting the corn from the fields and store that corn in DC Land's granaries until such time as Farmers Grain could accept delivery. Coombs explained that while it was storing the corn, DC Land still owned the corn. Coombs believed it could be sold to another person if DC Land could receive a higher price. *Id*. at 13.

Based on this aspect of Coombs' testimony, Rabo asserts there was an oral modification of the Contract, and DC Land was relieved of its obligation to deliver the additional 468 tons of corn under the Contract. The Court is not persuaded that the legal effect of these undisputed facts is a termination or modification of the Contract.

In context, it is clear that Coombs did not describe an oral modification of the Contract; Coombs discussed who owned the specific corn that was stored in DC Land's granary between November 2016 and February 2017. While Coombs did testify that he believed DC Land owned that corn and could sell it to another party at a higher price, he continued by explaining that DC Land would then be required to purchase corn to fulfill its obligation to Farmers Grain under the Contract. Coombs explained that, under the Contract, DC Land had an obligation to deliver an additional 468 tons of corn, just not necessarily the specific corn stored in DC Land's granary. *Id*. at 13.

DC Land has met its initial burden of proving there is no genuine issue of

MEMORANDUM OF DECISION - 9

material fact. The undisputed facts do not establish that DC Land and Farmers Grain orally modified the Contract in November 2016 to relieve DC Land of its obligation to deliver an additional 468 tons of corn to Farmers Grain. From the undisputed facts, the Court concludes the "close of the furnishing" of corn under the Contract was March 9, 2017. Rabo has not provided evidence showing a genuine issue of material fact remains for trial.

### C.  The question of the effect of the Notice

Rabo further asserts that even if the "close of the furnishing" of corn under the Contract was March 9, 2017, DC Land failed to effectively file the required notice to extend its lien. Rabo argues that the June 7, 2017 Notice was filed by Coombs as an individual and not by the entity DC Land Operating Company, LLC. Rabo does not dispute the Notice was filed nor its terms. The Court concludes Rabo's argument does not raise an issue of disputed fact but, rather, a legal issue as to the effect of the Notice.

When filing the Notice, Coombs listed DC Land as the "claimant" of the lien. The Notice was signed: "Mark Coombs DBA DC Land." Adv. Doc. No. 68 at 24. In his deposition, Coombs was asked why he signed his name followed by "DBA DC Land." He explained that he signed it in that manner because he was not aware of the proper way to sign on behalf of DC Land. Adv. Doc. No. 83-1 at 11. It is clear that the Contract was between Farmers Grain and DC Land, not

MEMORANDUM OF DECISION - 10

Coombs individually. Adv. Doc. No. 68 at 12. Coombs' testimony established he intended, and attempted, to sign the Notice on behalf of DC Land, the entity that made the Contract and delivered the corn to Farmers Grain under the Contract. The question here is merely a legal one: whether, under Oregon law, the Notice was sufficient to extend DC Land's lien.

The purpose of Oregon's lien notice statutes is to enable the public to discover whether property is encumbered by liens. *Fishback Nursery, Inc. v. PNC Bank, N.A.*, 2017 WL 6497802, *10 (N.D. Tex. Dec. 19, 2017) (citing *Community Bank v. Jones*, 566 P.2d 470, 483 (Or. 1977)). In order to accomplish its purpose, O.R.S. § 87.242 provides:

> (2) The notice of claim of lien required under subsection (1) of this section shall be a statement in writing verified by the attestation under penalty of perjury of the lien claimant and must contain:
>
>   (a) A true statement of the lien claimant's demand after deducting all credits and offsets;
>
>   (b) The name of the owner of the chattel to be charged with the lien;
>
>   (c) A description of the labor, services or materials provided by the lien claimant for the benefit of the owner of the chattel to be charged with the lien;
>
>   (d) A description of the chattel to be charged with the lien sufficient for identification;
>
>   (e) A statement that the amount claimed is a true and bona fide existing debt as of the date of the filing of notice of claim of lien;

MEMORANDUM OF DECISION - 11

> (f) The date on which payment was due to the lien claimant for labor, services or materials;
>
> (g) The terms of extended payment; and
>
> (h) Such other information as the Secretary of State may require for the written notice of claim of lien created by ORS 87.226.

It is uncontested that the Notice meets the requirements listed in subsections (a)–(h). Thus, DC Land argues that, despite being improperly signed, the Notice was nonetheless effective in extending DC Land's lien under the doctrine of substantial compliance. This doctrine is used by Oregon courts to avoid the harsh results of insisting on literal compliance with statutory notice provisions where the purpose of the statute has been met. *State v. Vandepoll*, 846 P.2d 1174, 1176 (Or. Ct. App. 1993). The doctrine requires the Court to determine the sufficiency of the notice given in light of the statute's objectives and to ignore claims of technical deficiency when the purpose of the statute is served. *Id*.

The Oregon Court of Appeals considered compliance with the statutory requirements in *McGregor Co. v. Heritage*, 620 P.2d 488 (Or. Ct. App. 1980). In that case, a lien claimant filed several lien notices listing the lien debtor as "Heritage Farms, c/o John Heritage" and "John Heritage doing business as Heritage Farms." The trial court disallowed the liens on the ground that the claimant had failed to comply with the requirements of O.R.S. § 87.242 when it

MEMORANDUM OF DECISION - 12

failed to name "Heritage Farms, Inc.," the true lien debtor, in the notices.[8] The Oregon Court of Appeals reversed the trial court, holding that the claimant had substantially complied with the statute. The court explained the claimant had apparently acted in good faith in filing its lien notices and there had been no showing of prejudice resulting from the claimant's failure to correctly name the lien debtor. The court explained "[i]t is always troublesome when the claimant has not complied strictly with the statutory requirements, but it is apparent from [prior case law] that substantial compliance in good faith is sufficient if no prejudice is shown." *Id*. at 496.

The purpose of the Notice was to notify others of DC Land's claim of lien against the inventory (or proceeds thereof) of Farmers Grain. The Notice accomplishes that purpose.[9] The Notice asserts DC Land is the claimant of a "lien upon certain chattels," including "corn for grain." The Notice further provides that "[t]he lien is also claimed upon the proceeds of the sale of any or all of said crops." *See* Adv. Doc. No. 68 at 24. No evidence suggests Coombs or DC Land did not act in good faith in filing the Notice. Nor is there evidence indicating that

---

[8] The Court recognizes that this factual scenario is slightly different from the one presented here as there is no dispute that the lien debtor, Farmers Grain, LLC, was properly listed. Instead the debate here stems from the adequacy of the lien claimant's signature.

[9] Oregon Administrative Rule 160-040-0500 provides that active records in Oregon's UCC information management system are retrievable by the name of the debtor. Neither party has provided the Court evidence of whether a search of "Farmers Grain, LLC," the lien debtor, would retrieve the Notice. However, it is clear from the face of the Notice that DC Land used debtor's correct legal name, "Farmers Grain, LLC."

MEMORANDUM OF DECISION - 13

Coombs' failure to properly sign the Notice mislead any party, including Rabo or any other third-party, to its prejudice. Having considered the parties' arguments and the record before it, the Court holds that, as in *McGregor Co.*, the Notice substantially complies with the requirements of O.R.S. § 87.242. The June 7, 2017 Notice was effective to extend DC Land's lien in Farmers Grain's inventory and proceeds therefrom.

**CONCLUSION**

DC Land has shown there is no genuine issue of material fact regarding its lien in Farmers Grain's inventory. Rabo has not provided evidence to show a genuine issue of material fact remains for trial. Additionally, DC Land has shown that, under Oregon law, it has a valid lien in the inventory of Farmers Grain and, therefore, is entitled to judgment as a matter of law. The Court will grant the motion for summary judgment. DC Land may submit an order and judgment consistent with this Decision.

DATED: February 7, 2018

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE